**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| WAYLON B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:25-00102-NCC |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Waylon B. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 4). For the following reasons, the Court will dismiss the Plaintiff's complaint.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on December 28, 2022. (Tr. 211-219). Plaintiff was initially denied on July 27, 2023, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 143-47, 155-56). After a hearing, by decision dated

April 30, 2024, the ALJ found Plaintiff not disabled. (Tr. 24-46). On April 3, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must

simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since September 1, 2019, the alleged onset date; that Plaintiff has the severe impairments of degenerative changes to the cervical and lumbar spine (status-post lumbar fusion), history of left knee arthroplasty, osteoarthritis of the right knee, obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 30-31). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the following non-exertional limitations:

> The claimant can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, and frequently balance, occasionally stoop, kneel, crouch and crawl. He must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. The claimant can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with supervisors, co-workers and the general public. He can maintain the concentration required to perform

> simple tasks, remember simple work-like procedures, and make simple work-related decisions.

(Tr. 33). The ALJ further found that Plaintiff is unable to perform his past relevant work as a psychiatric aide and a program director because the demands of that work exceed Plaintiff's RFC. (Tr. 39). However, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including the following representative occupations: table worker, machine tender, and hand assembler. (Tr. 39-40). Thus, the ALJ concluded that Plaintiff has not been under a disability from September 1, 2019, through the date of the decision. (Tr. 40).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on the ground that the ALJ did not properly consider Plaintiff's alleged need to elevate his legs due to chronic swelling in his knees. The Commissioner points out that there is no evidence in the record, apart from Plaintiff's testimony at the April 2024 hearing, that Plaintiff needs to elevate his legs. Plaintiff responds that nonetheless, the ALJ's failure to address Plaintiff's subjective complaints regarding elevating his legs is reversible error.

To evaluate Plaintiff''s subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Plaintiff specifically points to three flaws in the ALJ's discussion: (1) the daily activities identified by the ALJ did not contradict the specific allegation by Plaintiff regarding a need to periodically elevate his legs during the day; (2) the ALJ did not explain how the medical evidence contradicted Plaintiff's allegation that he continued to experience symptoms of recurring swelling in his bilateral knees that required him to elevate his legs at some point during the day; and (3) the ALJ did not acknowledge the favorable corroborating factor of Plaintiff's diligent efforts to seek treatment for his residual symptoms of recurring swelling in both knees.

As an initial matter, the Court declines to evaluate, in isolation, the ALJ's discussion of Plaintiff's alleged need to elevate his legs. First, "an ALJ is not required to discuss every piece of evidence, nor is he required to discuss every possible factor for evaluating subjective complaints." *Travis v. Colvin*, No. 1:23-CV-171-SNLJ, 2024 WL 5088825, at *6 (E.D. Mo. Dec. 12, 2024); *see also Williams v. Saul*, No. 4:19-CV-2332-NCC, 2020 WL 5814479, at *7 (E.D. Mo. Sept. 30, 2020) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.") (quoting *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)). Plaintiff does not challenge the ALJ's overall discussion of his knee swelling; instead, he asserts that remand is warranted because the ALJ inadequately assessed one alleged aid to such swelling. But "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman*, 596 F.3d at 966. Indeed, it appears the ALJ

*did* consider Plaintiff's alleged need to elevate his legs, as he noted Plaintiff's testimony that "he may need to elevate his legs" due to "ongoing issues with swelling of his knee" and commented that the vocational expert testified "to some information not directly addressed in this publication" such as "elevation of the legs." (Tr. 34, 40).

Second, the claimant has the burden to establish RFC, and the RFC need only include the limitations supported by the record. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016); *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). "[W]ithout negating the ALJ's obligation to develop the record, plaintiff 'has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability…'" *Jones v. Kijakazi*, No. 1:23-CV-00016-SNLJ, 2024 WL 3509498, at *5 (E.D. Mo. July 23, 2024) (quoting *Jones v. Berryhill*, No. 1:17-CV-162 NAB, 2018 WL 4358269, at *2 (E.D. Mo. Sept. 13, 2018)); 20 C.F.R. § 404.1512. As the Commissioner correctly points out—and Plaintiff does not dispute—the only evidence in the record that Plaintiff may need to elevate his legs is his testimony at the April 2024 hearing. His treatment records include his providers' advice to use ice and a home exercise program (HEP) for swelling (Tr. 910, 917, 975), and to avoid high-impact activities in favor of low-impact activities like walking, stationary bike, and pool workouts (Tr. 35, 999-1000). The records do not show that Plaintiff's medical providers advised him to elevate his legs, nor that they indicated that it was medically necessary. Nor did Plaintiff indicate any such need to elevate his legs in his function report. (Tr. 292-99).

Third, the Court notes that Plaintiff's discussion of his need to elevate his legs was brief and unspecific. Plaintiff's attorney asked him, "[D]oes anything help alleviate the swelling or address the discomfort of your swelling? Is there anything that you do positionally that helps?" Plaintiff responded, "Yes. I elevate my legs. I try to get my knee above my head, so I'll lay on

the floor, and I will put my leg up on the, on the couch or the chair. And that helps with the swelling some and then I'll also use ice[.]" (Tr. 75). Plaintiff did not report the frequency or duration of his leg elevation, nor express that it was a necessity—only that it helped "some" in combination with ice. (*Id.*). The Court is skeptical that such testimony was sufficient to alert the ALJ of an additional significant limitation, despite the vocational expert's later testimony, which the Court notes was premised on a question by Plaintiff's attorney that went beyond Plaintiff's testimony. (*See* Tr. 80-81) (inquiring about the effect of a limitation where "this hypothetical individual outside of normal breaks would need to elevate the right lower extremity for at least one hour a day, at above waist level").

"A record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity." *Rosa v. Astrue*, 708 F. Supp. 2d 941, 958 (E.D. Mo. 2010); *see also Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day.") (cited by *Rosa*); *Shaulis v. Colvin*, No. 4:12CV1571 TIA, 2014 WL 555912, at *21 (E.D. Mo. Feb. 12, 2014), *aff'd*, 589 F. App'x 811 (8th Cir. 2015) (commenting that plaintiff's testimony at the hearing that "she needs to lie down most of the day because of dizziness and headaches…does not reflect physician imposed restrictions" and "suggests that [her] restrictions in daily activities are self-imposed rather than by medical necessity.") (citing *Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence and record did not contain any evidence that medical condition required claimant to lie down for hours each day)); *Fredrickson v. Barnhart,* 359 F.3d 972, 977 n. 2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his

physicians or that they prescribed that he elevate his foot or lie down daily."). Therefore, the Court will not evaluate the ALJ's discussion of Plaintiff's leg elevation in isolation. The Court will instead address the adequacy of the ALJ's discussion more generally of Plaintiff's subjective complaints. Such determination will bear on whether the ALJ gave due consideration to the specific complaint at issue. *See, e.g., Owens v. Berryhill*, No. 17-CV-86-LTS, 2018 WL 2102400, at *5 (N.D. Iowa May 7, 2018), *report and recommendation adopted*, No. C17-86 LTS, 2018 WL 3056677 (N.D. Iowa June 20, 2018) ("Although the ALJ did not directly discuss claimant's diarrhea in his credibility assessment, it is clear from reading the ALJ's credibility assessment in context that the ALJ found claimant to be lacking credibility in all of her allegations."); *see also Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("[A]n ALJ is not required to discuss every piece of evidence submitted" and "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

First, the ALJ summarized Plaintiff's testimony regarding his symptoms. (Tr. 34). The ALJ then considered Plaintiff's medical record. While the ALJ acknowledged that Plaintiff continued "to experience significant issues with his right knee" including "pain and swelling which required aspiration and steroid injection" and Plaintiff's decision to undergo a total right knee replacement, the ALJ also noted "a myriad of examinations which recorded no gait issues, describing claimant's gait as normal and/or stable." (Tr. 36). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006); *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain). The ALJ also observed that healthcare providers advised Plaintiff to "avoid activities like running, jumping, and climbing, and low-

impact activities like walking, stationary bike, and pool workouts were recommended," with Plaintiff reporting to the providers that he walked for exercise. (Tr. 35-36). In light of the above, the ALJ concluded that "a reduced range of sedentary exertional level work appropriately accounts" for Plaintiff's impairments. (Tr. 36).

The ALJ further determined that Plaintiff's activities of daily living do not fully support the subjective complaints made by Plaintiff. (Tr. 34-35). Specifically, the ALJ noted Plaintiff's testimony that he was able to drive every day to pick up his children from school, help with cooking, occasionally vacuum, and pick up groceries. (Tr. 34). The ALJ also observed that Plaintiff described similar activities of daily living in his function report such as:

> driving his children to and from school each day. He (as well as his wife and children) care for a pet. The claimant denied any issues in completing his personal care tasks, including dressing, bathing, caring for his hair, shaving, or feeding himself. … Also, the claimant wrote he could prepare quick easy meals and use the microwave and air fryer, could do some dishes and some laundry, manage his financial matters, and shop in stores once or twice weekly – albeit for "just a little while."

(Tr. 34-35). The ALJ therefore found that "[h]ere, the claimant has described daily activities and exhibited behavior inconsistent with his allegations of entirely disabling symptoms and limitations." (Tr. 35). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility."); *Kovach v. Apfel*, 119 F. Supp. 2d 943, 967 (E.D. Mo. 2000) ("While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with Plaintiff's subjective complaints of a disabling impairment.") (citing *Murphy v. Sullivan,* 953 F.2d 383, 386 (8th Cir. 1992) & *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir. 1987)).

Finally, the Court observes that the ALJ did not entirely discredit Plaintiff's complaints of pain. For example, the ALJ found "not persuasive" the opinions of State agency consultants that Plaintiff could complete light exertional level work but "stand/walk only 2 hours in a workday." (Tr. 36-37). The ALJ explained that these opinions were inconsistent with the updated record, and especially with "the claimant's hearing testimony that he believed he was significantly limited in the amount of time he could stand/walk." (Tr. 37). The ALJ therefore limited him to sedentary work with multiple limitations.

For the above reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints, including those pertaining to elevating his legs, are based on substantial evidence. The ALJ properly considered Plaintiff's own testimony, his physical examinations and medical records, and his daily activities in evaluating Plaintiff's subjective symptoms. Although there may be some medical evidence in the record that supports the symptoms to which Plaintiff testified, this Court's task is not to reweigh the evidence presented to the ALJ. In this case, the ALJ's conclusion after weighing the evidence fell within the available "zone of choice," and the Court cannot override that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge the credibility and resolve conflicts in evidence.")

## V. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 14th day of August, 2026

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE